AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>604 1/2 South 3rd Street<br>Champaign, Illinois | )<br>)<br>)<br>)<br>)<br>) |

Case No. 24-MJ- 7094

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached hereto and incorporated by reference.

located in the _____Central_____ District of _____Illinois_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Distribution and Possession with Intent to Distribute Narcotics |
| 21 U.S.C. § 843(b) | Use of a Community Facility in Facilitating a Narcotics Offense |
| 21 U.S.C. § 846 | Conspiracy to Commit these Narcotics Offenses |

The application is based on these facts:

See affidavit of United States Postal Inspector Thomas McKeown, attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* 06/07/2024 *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Thomas McKeown

*Applicant's signature*

United States Postal Inspector Thomas McKeown

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____electronic mail and telephone_____ *(specify reliable electronic means)*.

Date: _____4/23/2024_____

Eric Long

Digitally signed by Eric Long
Date: 2024.04.23 15:30:11
-05'00'

*Judge's signature*

City and state: _____Urbana, Illinois_____

Eric I. Long, United States Magistrate Judge

*Printed name and title*

UNITED STATES DISTRICT COURT    )
    )
CENTRAL DISTRICT OF ILLINOIS    )

## AFFIDAVIT

I, Thomas McKeown, being duly sworn, state as follows:

1.      I am a Postal Inspector with the U.S. Postal Inspection Service. I have been so employed since approximately February 2019.

2.      As part of my duties as a USPIS Postal Inspector, I investigate criminal violations of federal laws relating to the mails, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances.

3.      I have received training in the area of narcotics investigations, money laundering, financial investigations and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws.

4.      I have participated in investigations that have led to the issuance of

1

search warrants involving violations of narcotic laws. These warrants involved the search of locations including: residences of targets, their associates and relatives, "stash houses" (houses used as drug/money storage locations), storage facilities, bank safe deposit boxes, cellular/camera phones, and computers. The evidence searched for, and recovered, in these locations has included controlled substances, records pertaining to the expenditures and profits realized there from, monetary instruments and various assets that were purchased with the proceeds of the drug trafficking. I have participated in the execution of multiple federal search warrants.

5.      The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence, instrumentalities, and contraband of violations of Title 21, United States Code, Sections 841, 846 and 843(b), are located at 604 ½ South 3rd Street, Champaign, Illinois.

6.      This affidavit is made in support of:

a.      a request for authorization to install an electronic tracking device, an optical detection device, and a filament device on or inside the following parcel: U.S. Priority Mail Parcel bearing tracking number 9405 5362 0624 8842 7044 52 (the "Subject Parcel") and to monitor the transmission of the tracking device and trigger devices when the Subject Parcel is in both public and private areas; and

b.      an application for an anticipatory warrant to search the residence and detached garage located at 604 ½ South 3rd Street, Champaign, Illinois, described further in Attachment A (the "Subject Premises") to the search warrant application, for evidence, instrumentalities, and contraband described further in Attachment B to that application, concerning narcotics offenses, in violation of Title 21, United States Code, Sections 841 (distribution and possession with intent to distribute narcotics), 843(b) (use of a community facility in facilitating a narcotics offense), and 846 (conspiracy to commit these narcotics offenses) (the "Subject Offenses").

7.      The tracking devices are necessary so that law enforcement may monitor the approximate location of the Subject Parcel during suspected criminal activity. The trigger devices (the optical detection device and the filament device) are necessary so that law enforcement may monitor when the Subject Parcel is opened. I also seek an anticipatory search warrant to search the Subject Premises

3

in the event the Subject Parcel, which is addressed to the Subject Premises, is opened at the Subject Premises following its controlled delivery by law enforcement as described below.

8.      As further set forth below, there is probable cause to believe that the Subject Parcel has been and will be used in furtherance of a narcotics offense, namely the Subject Offenses, and that information concerning the location of the Subject Parcel will lead to evidence of the Subject Offenses, including the identification of co-conspirators, locations where controlled substances and evidence of the offenses are being stored, and the locations and identity of suppliers of controlled substances. Also set forth below are facts that I believe are sufficient to establish probable cause to believe that evidence, instrumentalities, and contraband of violations of the Subject Offenses will be found at the Subject Premises upon the controlled delivery of the Subject Parcel to the Subject Premises.

## BACKGROUND INFORMATION

9.      Through training, experience, and discussions with other experienced agents, I know that:

        a.      Drug traffickers commonly maintain books, papers, files, and other records which reflect the names, addresses and/or telephone numbers of their suppliers, couriers, customers, and other associates in the illegal drug trade.

4

b.      Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other files relating to the purchase, packaging, sale, distribution, and transportation of their product.

c.      Drug traffickers conceal in their residences and/or places of business the proceeds of their illegal activity, including large amounts of United States currency, financial instruments, precious metals, jewelry, rare coins, works of art, and other items of value, as well as books and records regarding the acquisition, use, and disposition of such items of value.

d.      When drug traffickers amass large proceeds from the sale of controlled substances, they attempt to legitimize these profits, often accomplishing this goal by using the services of banks, other financial institutions, and real estate brokers; and maintain books and papers related to such efforts.

e.      It is common for drug traffickers to maintain the aforementioned books, papers, and documents in secure places within their residences and/or places of business so that the drug traffickers have ready access to such information.

f.      Drug traffickers frequently take, or cause to be taken, photographs of themselves, their associates in the drug trade, property acquired from the distribution of drugs, and their product, and such photographs are often

kept in their residences and/or places of business. Drug traffickers often place assets, including real and personal property, such as vehicles, in names other than their own to avoid the detection and forfeiture of such assets by government agencies; and that the drug traffickers continue to use these assets and to exercise dominion and control over them even though the assets are nominally owned by others. It is common practice for drug traffickers to conceal in their residences and/or places of business secure places to store the contraband including but not limited to safes and that once a sizeable load of contraband has been delivered, to repackage and break-down larger quantities of illegal drugs into smaller more easily handled and concealed quantities for distribution; and that paraphernalia related to the packaging, cutting, weighing and distribution of contraband is usually secreted or stored in their residences and/or places of business.

g.      Drug traffickers frequently possess firearms and ammunition to protect their illegal product.

h.      Drug traffickers frequently keep the aforementioned evidence set forth in their residences because, for example, drug traffickers keep detailed records of their activities close at hand as they receive calls from other members of the organization at all hours of the day and night, and need access to those materials. Additionally, although some drug traffickers prefer to store contraband

outside of their known places of residence, in my training and experience, they do not have the same concerns when it comes to items set forth in above because said items are not illegal to possess.

10.    In addition, during the course of such residential searches, I and other agents have also found items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the subject premises. Such identification evidence is typical of the articles people commonly maintain in their residences, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys.

### FACTS SUPPORTING PROBABLE CAUSE TO SEARCH

**A.    January 2024-February 2024: Four packages were sent to Subject Premises that had characteristics consistent with parcels containing controlled substances.**

      1.    January 16, 2024 – First suspicious package sent to Subject Premises

11.    According to records kept by the United States Postal Service ("USPS"), on or about January 16, 2024, a Priority Mail parcel bearing tracking number 9405 5362 0624 8153 8028 78 was shipped to "Diego" at the Subject Premises ("Parcel 1"). Parcel 1 was sent from San Jose, California 95101 and had a return address of "Wilbert Salas 366 Cureton Pl San Jose, CA 95127". Parcel 1 bore

$18.51 in postage and weighed approximately 3 pounds and 2 ounces.

12.     I observed several characteristics about the parcel that, in my training and experience, can be consistent with parcels containing controlled substances.

13.     Specifically, I ran the sender and recipient names and addresses on the parcel through a law enforcement database. According to the database "Wilbert Salas" did not associate with the sender address. Additionally, no individuals with the first name "Diego" associated with the Subject Premises.

14.     Based on my training and experience, fictitious sender and recipient names and addresses can indicate that the sender or receiver does not want to be associated with the parcel.

15.     According to USPS records, Parcel 1 was delivered to the Subject Premises on or about January 20, 2024.

2.     January 30, 2024 – Second suspicious package sent to Subject Premises

16.     According to records kept by the United States Postal Service ("USPS"), on or about January 30, 2024, a Priority Mail parcel bearing tracking number 9405 5362 0624 8248 5426 65 was shipped to "Diego Rivera" at the Subject Premises ("Parcel 2"). Parcel 2 was sent from El Monte, California 91732 and had a return address of "Jayden Hong 11648 Lower Azusa Road El Monte, CA 91732". Parcel 1 bore $7.92 in postage and weighed approximately 3 ounces.

17.     I observed several characteristics about the parcel that, in my training and experience, can be consistent with parcels containing controlled substances.

18.     Specifically, I ran the sender and recipient names and addresses on the parcel through a law enforcement database. According to the database "Jayden Hong" did not associate with the sender address. Additionally, according to the database, "Diego Rivera" did not associate to the recipient address.

19.     Based on my training and experience, fictitious sender and recipient names and addresses can indicate that the sender or receiver does not want to be associated with the parcel.

20.     According to USPS records, Parcel 2 was delivered to the Subject Premises on or about February 1, 2024.

3.     February 14, 2024 – Third Suspicious Package Sent to the Subject Premises

21.     According to records kept by the United States Postal Service ("USPS"), on or about February 14, 2024, a Priority Mail parcel bearing tracking number 9405 5362 0624 8358 4110 73 was shipped to "Diego Rivera" at the Subject Premises ("Parcel 3"). Parcel 3 was sent from San Jose, California 95116 and had a return address of "Michael Nguyen 2255 Ironpicket Ct, CA 92614". Parcel 3 bore $18.15 in postage and weighed approximately 2 pound and 13 ounces.

22.     I observed several characteristics about the parcel that, in my training

and experience, can be consistent with parcels containing controlled substances.

23.     Specifically, I ran the sender and recipient names and addresses on the parcel through a law enforcement database. According to the database "Michael Nguyen" did not associate with the sender address. Additionally, according to the database, "Diego Rivera" did not associate to the recipient address.

24.     Based on my training and experience, fictitious sender and recipient names and addresses can indicate that the sender or receiver does not want to be associated with the parcel.

25.     According to USPS records, Parcel 3 was delivered to the Subject Premises on or about February 15, 2024.

    4.     February 20, 2024 – Fourth Suspicious Package Sent to the Subject Premises

26.     According to records kept by the United States Postal Service ("USPS"), on or about February 20, 2024, a Priority Mail parcel bearing tracking number 9405 5362 0624 8397 8115 68 was shipped to "Diego Rivera" at the Subject Premises ("Parcel 4"). Parcel 4 was sent from Irvine, California 92614 and had a return address of "Alan Kim 9 Aprilla Irvine, CA 92614". Parcel 1 bore $7.92 in postage and weighed approximately 1 pounds and 1 ounce.

27.     I observed several characteristics about the parcel that, in my training

and experience, can be consistent with parcels containing controlled substances.

28.     Specifically, I ran the sender and recipient names and addresses on the parcel through a law enforcement database. According to the database "Alan Kim" did not associate with the sender address. Additionally, according to the database, "Diego Rivera" did not associate to the recipient address.

29.     Based on my training and experience, fictitious sender and recipient names and addresses can indicate that the sender or receiver does not want to be associated with the parcel.

30.     According to USPS records, Parcel 4 was delivered to the Subject Premises on or about February 22, 2024.

**B.     April 22, 2024: Postal Inspectors Discovered Narcotics in the Subject Parcel**

31.     On Sunday, April 21, 2024, upon a review of Postal Business Records, the USPIS discovered that USPS Priority Mail parcel #9405 5362 0624 8842 7044 52 (Subject Parcel) had been placed in the USPS mail stream. Postal Business Records indicate the Subject Parcel was first scanned on April 19, 2024, at approximately 8:44 PM PST at the USPS Industry Processing and Distribution Center in City of Industry, California, a known narcotics source city, and the parcel was addressed to "DIEGO SANCHEZ" at 604 1/2 S 3RD ST, CHAMPAIGN, IL 61820-5621. Postage for the parcel was paid for using an online service which allows customers

to pay using cryptocurrency, and the weight listed for the Subject Parcel was 50 pounds. Postal Inspectors submitted a request to hold this parcel at the Champaign, IL Processing and Distribution Center ("P&DC") in an effort to intercept the Subject Parcel prior to it being delivered at its final destination in Champaign, IL.

32.     On Monday, April 22, 2024, I received an alert via Postal Business records notifying me that the Subject Parcel had arrived at the USPS Champaign, IL P&DC. That same day, Postal Inspectors or Task Force Officers intercepted and took custody of the Subject Parcel at the USPS Champaign, IL P&DC located at 2001 N. Mattis Ave., Champaign, IL 61821. An examination of the Subject Parcel revealed it had been addressed from "ERIC KIM" to an individual and was packaged in a USPS medium flat rate box. A subsequent review of a law enforcement database revealed the sender's name listed on the Subject Parcel, "ERIC KIM", was not currently associated with the sender address, 621 N LINCOLN AVE, MONTEREY PARK, CA 91755. A subsequent review of a law enforcement database revealed the recipient's name listed on the Subject Parcel, "DIEGO SANCHEZ", was not currently associated with the recipient address, at 604 1/2 S 3RD ST, CHAMPAIGN, IL 61820-5621. In addition, the postage for the Subject Parcel had been paid for using an online service which allows customers

to pay using cryptocurrency.



33.    On Monday, April 22, 2024, Alfonso Galvan, a Task Force Officer (TFO) with the United States Postal Inspection Service and his canine partner "Jager" responded to the USPIS Champaign Office located at 2001 N. Mattis Ave., Champaign, IL. "Jager" is trained to detect the controlled substance odors of marijuana, methamphetamine, cocaine and heroin. "Jager" is certified as a narcotics detection canine by the Illinois Law Enforcement Training and Standards Board and was last certified on March 1, 2024.

34.    On April 22, 2024, Postal Inspectors or Task Force Officers were present at the USPIS Champaign Office and observed the following. The Subject Parcel was placed among ten (10) empty USPS Priority Mail and Express Mail flat

13

rate boxes and envelopes of various sizes, in an area not known to have been contaminated by a narcotic odor. Subsequently, TFO Galvan had "Jager" search the area containing the Subject Parcel. Upon arriving at the Subject Parcel, TFO Galvan advised that canine "Jager" gave a "Trained Final Response", by sitting/laying down at the Subject Parcel indicating the presence of a narcotic odor. Postal Inspectors or Task Force Officers observed "Jager" to not react in the same manner to the other ten (10) empty boxes or envelopes.

35.    On April 22, 2024, I submitted an affidavit in support of a warrant to seize and search the Subject Parcel. On April 22, 2024, United States Magistrate Judge Eric I. Long, Central District of Illinois, issued a search warrant for the Subject Parcel for the reasons stated in the application and affidavit (later assigned case number 24-MJ-7093).

36.    On or about April 22, 2024, law enforcement executed search warrant 24-MJ-7093 on the Subject Parcel. The Subject Parcel was found to contain two USPS Priority Mail small flat rate boxes. Both of the smaller boxes contained a bundle wrapped in brown paper. Within the brown paper from both boxes was a plastic bag containing round circular tablets marked "dp" on one side and "30" on the other side. Based on my training and experience, I am aware that these markings on the tablets is the same as the markings as an Adderall tablet. Law

14

enforcement field-tested a tablet from each of the two bags and both field tests indicated the presence of methamphetamine within the tablets. The total gross weight of both bags of orange tablets was approximately 853.7 grams.



37.    Based on my training and experience, the large quantity of the tablets contained in the Subject Parcel indicates that the methamphetamine is intended for distribution rather than personal consumption.

38.    Based on my training and experience, the packaging of the tablets inside multiple layers of wrappings is consistent with the way drug traffickers package controlled substances in an effort to avoid detection.

39.    On or about April 22, 2024, the Subject Parcel and its contents, including the combined 853.7 grams of orange tablets containing methamphetamine, were confiscated by USPIS Postal Inspectors and secured at a

15

USPIS offices for safe storage.

**PLANNED CONTROLLED DELIVERY OF THE SUBJECT PARCEL**

40.     Based on the above-stated facts, and my training and experience, I believe that it is likely that the Subject Parcel was sent to a location where the recipient knows of its contents and anticipates that it will be delivered. Based on my training and experience, I believe that it would be unlikely for a drug trafficker to send contraband of this quantity to a person who did not know to expect the contraband. I further believe this because, in my training and experience, drugs are frequently bought and paid for with currency and thus represent items of value that are unlikely to be discarded for no consideration or payment.

41.     As part of the ongoing USPIS investigation, postal inspectors and other law enforcement plan to conduct a controlled delivery of the Subject Parcel to the Subject Premises in order to identity the person or persons who take possession of the Subject Parcel. As part of the controlled delivery, postal inspectors plan to rewrap the Subject Parcel to give the appearance that it was not opened and replace the approximately 853.7 grams of tablets that field-tested positive for methamphetamine with a sham substance.

42.     In conjunction with this controlled delivery, if this Court grants approval, Postal Inspectors will place in the Subject Parcel an optical detection

16

device and a filament detection device, which will emit a recognizable signal to the postal inspectors when the Subject Parcel is opened, and an electronic tracking device, which will enable the postal inspectors to monitor the movement of the Subject Parcel via GPS. The tracking device will also alert the Postal Inspectors when the package is moved without alerting those who receive the Subject Parcel to the activities of law enforcement. These devices cannot transmit or record voice communication or acquire oral communication.

43.     Based on my training and experience, I believe that the monitoring of a tracking device will be relevant to the ongoing criminal investigation. Knowledge of the location of the Subject Parcel will help law enforcement agents establish physical surveillance on the person who takes custody of the Subject Parcel and, taken in combination with other evidence in the investigation, may help agents to determine the intended recipient of the Subject Parcel. Further, knowledge of when and where the Subject Parcel is opened will assist law enforcement in identifying the intended recipient of the narcotics contained in the Subject Parcel.

44.     Based on my knowledge, training, and experience, as well as the experience of other law enforcement personnel with whom I have spoken, I expect and anticipate that if a search is undertaken inside the Subject Premises, law

enforcement will be able to locate and seize the Subject Parcel after it has been opened by someone at the Subject Premises.

45. Based on my knowledge, training, and experience, as well as the experience of other law enforcement personnel with whom I have spoken, packages that recipients believe contain contraband, such as the Subject Parcel, can be opened at any time of day. Moreover, once the Subject Parcel is opened, the recipient may find the GPS device and may attempt to destroy evidence before law enforcement is able to execute the search. Accordingly, law enforcement agents seek to perform the search at any time in the day or night.

## PLANNED CONTROLLED DELIVERY OF THE SUBJECT PARCEL

46. In addition, I believe that immediate notification of the government's seizure of information transmitted by the tracking, optical detection, and filament devices may have an adverse result as defined in Title 18, United States Code, Section 2705(a)(2), namely, flight from prosecution and destruction of and tampering with evidence. Specifically, if the government was required to give notice to the recipient of the Subject Parcel that the Subject Parcel had been tracked, the recipient may alert co-conspirators or disclaim the Subject Parcel.

47. The disclosure of the fact and the nature of the government's investigation could also lead to the subjects of the investigation attempting to

dispose of any evidence of controlled substance distribution that they currently have, like scales, packaging materials, drug ledgers, and supplier and customer contact information. In addition, serving notice to the owner of the Subject Parcel could lead to evidence tampering and/or flight from this jurisdiction, and could therefore seriously jeopardize the investigation. For example, if the subjects of the investigation learned that the government was attempting to determine the location of the Subject Parcel, they would undoubtedly conclude that the government was investigating them and any criminal associates who are currently unknown. This would result in a change of locations and patterns of criminal activity, the destruction of evidence that currently is in the subjects' possession, and possible flight from this jurisdiction.

48. Accordingly, I believe there is good cause to seek delay of the notification provisions applicable to the tracking device warrant and order. Moreover, I believe a period of delayed notification of 45 days is appropriate in this case. If the government were required to give notice within 10 days of the conclusion of tracking the Subject Parcel, such notice would necessarily compromise the ongoing investigation and lead to the adverse results discussed above. Accordingly, I believe there is good cause, at this time, to seek a 45-day delay of the notification provisions applicable to the tracking device warrant and

order.

## DELAYED NOTIFICATION OF THE TRACKING DEVICE

49.     In addition, I believe that notification within 10 days of the government's seizure of information transmitted by the tracking and trigger devices may have an adverse result as defined in Title 18, United States Code, Section 2705(a)(2), namely, flight from prosecution and destruction of and tampering with evidence.

50.     Specifically, if the government was required to give notice to the recipient of the Subject Parcel that the Subject Parcel had been tracked, the recipient may alert co-conspirators or disclaim the Subject Parcel.

51.     The disclosure of the fact and the nature of the government's investigation could also lead to the subjects of the investigation attempting to dispose of any evidence of controlled substance distribution that they currently have.

52.     Accordingly, I believe there is good cause to seek delay of the notification provisions applicable to any warrant. Moreover, I believe a period of delayed notification of 45 days is appropriate in this case. If the government were required to give notice within ten days of the conclusion of tracking the Subject Parcel, such notice would necessarily compromise the ongoing investigation and

lead to the adverse results discussed above. Accordingly, I believe there is good cause at this time to seek a 45-day delay of the notification provisions applicable to the search warrant.

## CONCLUSION

53.     Based on the above information and my training and experience, I respectfully submit that there is probable cause to believe that narcotics offenses, in violation of Title 21, United States Code, Sections 841, 846 and 843(b), have been committed, and that evidence, instrumentalities, and contraband relating to this criminal conduct, as further described in Attachment B, will be found in the Subject Premises, as further described in Attachment A.

54.     Accordingly, based upon the above facts and my training and experience, I believe that evidence of narcotics offenses, including violations of Title 21, United States Code, Sections 841, 846 and 843(b) will be found within the Subject Premises upon the occurrence of the following conditions:

- entry of the Subject Parcel into the Subject Premises; or

- the opening of the Subject Parcel after its delivery to the Subject Premises. The exact timing of such conditions may occur after daytime and thus reasonable cause exists to execute the requested warrant during the day or night.

21

55.     I therefore respectfully request that this Court issue:

•       a warrant and order authorizing the installation and monitoring of tracking devices and trigger devices in the Subject Parcel; and

•       an anticipatory search warrant, which may be executed any time of day or night and only if either of the conditions in paragraph 54 occurs, for the residence located at 604 ½ South 3rd Street Champaign, Illinois more particularly described in Attachment A to the search warrant application, authorizing the seizure of the items described in Attachment B to that application.

56.     Based on the foregoing, Affiant respectfully requests an anticipatory search warrant expressly conditioned on the occurrence of either of the conditions described above.

FURTHER AFFIANT SAYETH NOT.

Respectfully submitted,

s/Thomas McKeown

_____

Postal Inspector Thomas McKeown
United States Postal Inspection Service

Attested to by the applicant by reliable electronic means, being telephone and electronic mail, in accordance with Fed. R. Crim. P. 4.1 on this ___23rd___ day of April 2024.

Eric Long

Digitally signed by Eric Long
Date: 2024.04.23 15:30:42
-05'00'

HONORABLE ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE

22